IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

EVANSTON INSURANCE COMPANY, §
§
    Plaintiff, §
§
v. § CIVIL ACTION NO. H-16-818
§
MID-CONTINENT CASUALTY COMPANY, §
§
    Defendant. §

### MEMORANDUM AND RECOMMENDATION

Pending before the court[1] are Plaintiff's Motion for Summary Judgment (Doc. 15) and Defendant's Amended Motion for Summary Judgment (Doc. 17). The court has considered the motions, the responses, the replies, the Stipulations of Fact, and the applicable law. For the reasons set forth below, the court **RECOMMENDS** that Plaintiff's motion be **GRANTED** and Defendant's motion be **DENIED**.

### I. Case Background

On March 28, 2016, Plaintiff, an excess liability insurer, filed this subrogation action seeking reimbursement from Defendant, the underlying primary insurer, for a portion of the payments Plaintiff made on behalf the parties' mutual insured with regard to a state lawsuit.[2] In late January of this year, the parties filed

---

    [1] This case was referred to the undersigned magistrate judge pursuant to 28 U.S.C. § 636(b)(1)(A) and (B), the Cost and Delay Reduction Plan under the Civil Justice Reform Act, and Federal Rule of Civil Procedure 72. See Doc. 13, Ord. Dated July 26, 2016.

    [2] See Doc. 1, Pl.'s Orig. Compl.

cross-motions for summary judgment.[3]

The parties stipulated to the material facts.[4] Defendant issued a commercial auto policy to Global Waste Services, LLC, ("Global") with a $1,000,000 per-accident limit of liability.[5] Plaintiff issued Global an excess liability policy with a $5,000,000 per-accident limit of liability.[6]

The underlying commercial auto policy provided that Defendant would "pay all sums an 'insured' legally must pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies, caused by an 'accident' and resulting from the ownership, maintenance or use of a covered 'auto.'"[7] In addition to the payment of damages, Defendant agreed to defend Global against lawsuits seeking damages.[8] The policy defined "accident" to include "continuous or repeated exposure to the same conditions resulting in 'bodily injury' or 'property damage.'"[9] Under the "Limit Of Insurance" provision, the policy stated that "[r]egardless of the number of covered 'autos,' 'insureds,'

---

[3] See Doc. 15, Pl.'s Mot. for Summ. J.; Doc. 17, Def.'s Am. Mot. for Summ. J.

[4] See Doc. 14, Stipulations of Fact.

[5] Id. ¶ 1.

[6] Id. ¶ 2.

[7] Doc. 17-4, Ex. 2 to Def.'s Am. Mot. for Summ. J., Com. Auto Pol'y, Bus. Auto Coverage Form p. 2.

[8] Id.

[9] Id. p. 9.

premiums paid, claims made or vehicles involved in the 'accident,'" the most Defendant would pay for "the total of all damages . . . resulting from any one 'accident'" was the policy limit of $1,000,000.[10]

On November 15, 2013, Marlon Diggs ("Diggs"), who was an employee of Global, was driving a Mack roll-off truck west on North Beltway 8 in Houston.[11] According to witnesses, Diggs was driving erratically.[12] At approximately 11:04 a.m., Diggs' Mack truck struck a Dodge pick-up truck driven by Paul Garner in the 800 block of North Beltway 8.[13] The Mack truck continued traveling west and, at approximately 11:07 a.m., struck a Ford pick-up truck driven by Alexander Garcia ("Garcia") in the 2500 block of North Beltway 8.[14]

The Mack truck continued traveling west and, at approximately 11:09 a.m., struck a Honda Accord that was waiting in line at a toll plaza in the 3300 block of North Beltway 8.[15] Joseph Williams was driving the Honda Accord, and his wife, Laurie Williams, was the only passenger.[16] The Mack truck pushed the Honda Accord

---

[10] Id. p. 5.

[11] Doc. 14, Stipulations of Fact ¶¶ 3, 4; see also Doc. 17-3, Ex. 1 to Def.'s Am. Mot. for Summ. J., Incident Report p. 13.

[12] See Doc. 14, Stipulations of Fact ¶ 4.

[13] Id. ¶ 5.

[14] Id. ¶ 6.

[15] Id. ¶ 7.

[16] Id.

3

forward more than 100 feet into the crash attenuator barrels separating two toll lanes, where the Honda Accord came to rest perpendicular to the direction of the road.[17] Although Joseph Williams was not seriously injured in the collision, Laurie Williams was severely injured.[18] Debris from the collision of the Mack truck with the Honda Accord struck a vehicle driven by Nicholas Cruz ("Cruz").[19]

> The Mack truck then continued to travel through the automatic coin machine lane for approximately [sixty-six] feet before striking a Dodge Charger driven by Gwenetta Powell [("Powell")]. While traveling through the lane, the Mack truck struck the tollbooth owned by Harris County, causing significant damage to it.[20]

The driver's door of the Mack truck opened as it pushed the Dodge Charger, and Diggs fell out of the Mack truck.[21] The driverless Mack truck continued pushing the Dodge Charger "until it crashed into the right side retaining wall, pinning the Dodge in between."[22] Diggs did not apply the brakes at any time from first striking the Honda Accord until the Mack truck crashed into the retaining wall.[23]

---

[17] See id.

[18] See id.; Doc. 17-3, Ex. 1 to Def.'s Am. Mot. for Summ. J., Incident Report p. 13.

[19] Doc. 14, Stipulations of Fact ¶ 11.

[20] Id. ¶ 8.

[21] Id. ¶ 9.

[22] Id.

[23] Id. ¶ 10.

Powell and Diggs both died.[24]

Relatives of Powell filed suit in state court.[25] "The Williams Family intervened in that suit, making claims on behalf of Joseph Williams, Laurie Williams, and a minor child."[26] Other relatives of Powell also filed a separate lawsuit, which was consolidated into the first one filed.[27]

Additionally, Harris County made demands on Global for the expense of the cleanup of hazardous waste and the repair of the toll plaza.[28] Joseph and Laurie Williams' auto insurer made a subrogated demand for repairs to the Honda Accord.[29] Garcia and Cruz also claimed damages for repairs to their vehicles.[30] Defendant settled Harris County's cleanup claim for $1,340, Williams' repair claim for $9,500, Garcia's repair claim for $4,225.18, and Cruz's repair claim for $2,300.[31]

After a period of discovery in the collective lawsuit, a settlement was reached on the Williams' claims for $4,500,000.[32]

---

[24] Id. ¶ 9.

[25] Id. ¶ 12.

[26] Id.

[27] Id. ¶ 13.

[28] Id. ¶ 14.

[29] Id. ¶ 15.

[30] See id. ¶ 16.

[31] See id.

[32] See id. ¶ 17.

5

Defendant contributed $982,634.82 and claimed exhaustion.[33] Plaintiff contributed the remaining $3,517,365.18 of the Williams' settlement and assumed defense of the remaining claims against Global.[34] Plaintiff reserved its right to seek reimbursement from Defendant.[35] Plaintiff subsequently settled the claims of Powell's relatives for $2,125,000.[36] Plaintiff also settled Harris County claim for repair of the toll plaza for $75,000.[37]

The total of Plaintiff's indemnity payments was $5,717,365.18, and the total of Plaintiff's defense fees and expenses was $40,881.45.[38]

## II. Summary Judgment Standard

Summary judgment is warranted when the evidence reveals that no genuine dispute exists on any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Stauffer v. Gearhart, 741 F.3d 574, 581 (5th Cir. 2014). When parties file cross-motions for summary judgment and stipulate to certain facts, each movant's burden remains the same. See Shaw Constructors v.

---

[33] See id. ¶¶ 17, 18.

[34] See id.

[35] Id. ¶ 19.

[36] Id. ¶ 20.

[37] Id. ¶ 21.

[38] Id. ¶¶ 22, 23.

6

ICF Kaiser Eng'rs, 395 F.3d 533, 538-39 (5th Cir. 2004). The court views the evidence in favor of each nonmovant. See Tidewater Inc. v. United States, 565 F.3d 299, 302 (5th Cir. 2009)(quoting Ford Motor Co. v. Tex. Dep't of Transp., 264 F.3d 493, 499 (5th Cir. 2001)).

### III. Analysis

The parties agree that only one issue is to be decided in this case. The issue is whether the bodily injury and property damage arising out of the Mack truck's collisions with multiple cars and the toll plaza on November 15, 2013, resulted from one "accident" as that term is defined in the commercial auto policy issued to Global by Defendant.

Defendant's policy provided coverage for bodily injury and property damage caused by an accident which included "continuous or repeated exposure to the same conditions."[39] The policy limit of $1,000,000 applied to each accident regardless of, among other things, the number of claims made or vehicles involved in the accident.[40]

Plaintiff argues that the collisions between the Mack truck and the Honda Accord, the Mack truck and the toll plaza, and the Mack truck and the Dodge Charger constituted multiple accidents.[41]

---

[39] Doc. 17-4, Ex. 2 to Def.'s Am. Mot. for Summ. J., Com. Auto Pol'y, Bus. Auto Coverage Form pp. 2, 9.

[40] See id. p. 5.

[41] See Doc. 15, Pl.'s Mot. for Summ. J. p. 5.

7

Defendant, on the other hand, contends that the three collisions at the toll plaza "involved only one 'accident' because all of the bodily injuries and property damage were caused by the continuous exposure of the out-of-control Mack truck."[42] Defendant concedes that the collision between the Mack truck and Garcia's Ford pick-up truck in the 3300 block of North Beltway 8 was a separate accident for which damages Defendant agrees to reimburse Plaintiff.[43]

Insurance policies are subject to the rules of contract interpretation. State Farm Lloyds v. Page, 315 S.W.3d 525, 527 (Tex. 2010). In construing the terms of a written contract, the court's primary goal is always "to determine the contracting parties' intent through the policy's written language." Id. Courts construe terms in contracts to have their plain, ordinary meaning unless something in the contract itself indicates that the parties intended for them to have particular definitions. Tanner v. Nationwide Mut. Fire Ins. Co., 289 S.W.3d 828, 831 (Tex. 2009).

When interpreting per-occurrence or per-accident liability limits, courts applying Texas law focus "on the events that . . . cause the injuries and . . . give rise to the insured's liability rather than on the number of injuries." Axis Ins. Co. v. Buffalo

---

[42] Doc. 20, Def.'s Resp. in Opp. to Pl.'s Mot. for Summ. J. p. 1.

[43] See id. p. 1 n.2; Def.'s Am. Mot. for Summ. J. p. 3 n.1. In its reply, Defendant states that its position is that the collision between the Mack truck and Garcia's vehicle was part of the same accident as the collisions at the toll plaza and that it only agreed to pay Plaintiff for Garcia's repairs to allow the court to focus on the collisions at the toll plaza as a "practical approach." Doc. 22, Def.'s Reply p. 2.

8

Marine Servs., Inc., Civ. Action No. H-12-0178, 2013 WL 5231619, at *15 (S.D. Tex. Sept. 12, 2013)(applying Texas law)(unpublished) (quoting H.E. Butt Grocery Co. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa., 150 F.3d 526, 530 (5th Cir. 1998)(applying Texas law)); see also Esparza v. Eagle Express Lines, Inc., No. 4:05-CV-315, 2007 WL 969585, at *8 (E.D. Tex. Mar. 28, 2007)(unpublished)(same). Texas courts' application of "cause" analysis in determining the number of occurrences or accidents is in line with the majority of courts and jurisdictions nationwide. See Ran-Nan Inc. v. Gen. Acc. Ins. Co. of Am., 252 F.3d 738, 740 (5th Cir. 2001).

In Maurice Pincoffs Company v. St. Paul Fire & Marine Insurance Company, 447 F.2d 204, 205 (5th Cir. 1971)(applying Texas law), the Fifth Circuit interpreted an insurance policy with a per-occurrence liability limit of $50,000. There, the policy defined "occurrence" to mean "an accident, including injurious exposure to conditions, which results, during the policy period, in bodily injury or property damage neither expected nor intended from the standpoint of the insured." Id. at 206.

The plaintiff imported 1,000 bags of contaminated birdseed. See id. at 205. Unaware of the contamination, the plaintiff sold the seed in the original bags to eight seed and grain dealers in two states, which sold the seed to bird owners. Id. The contaminated seed killed many birds, and the bird owners filed

9

claims against the dealers.  Id.  The dealers then filed claims against the plaintiff.  Id.

The Fifth Circuit decided that the occurrence at issue was the plaintiff's sale of the contaminated seed, not the contamination itself.  See id. at 206.  The court reasoned that the sale gave rise to the plaintiff's liability, stating "If [the plaintiff] had destroyed the seed before sale, for instance, there would be no occurrence at all for which the insured would be liable."  Id.  The court acknowledged that the birds' deaths resulted from the contamination of the bird seed but emphasized that the plaintiff's liability resulted from the sale of the seed.  Id. at 207.  Thus, the eight sales to dealers constituted eight occurrences.  See id.

The policy language analyzed in Maurice Pincoffs Company did not contain the words "continuous and repeated" that are in the policy under consideration here.  However, the instructive aspect of the Maurice Pincoffs Company case is the court's focus on the event that gave rise to the insured's liability, rather than merely on the event that caused injury, in determining what constituted an occurrence under the policy.

In Foust v. Ranger Insurance Company, 975 S.W.2d 329, 333 (Tex. App.—San Antonio 1998, writ denied), a Texas intermediate appeals court interpreted an insurance policy with a per-occurrence liability limit of $100,000.  There, the policy defined "occurrence" to mean "a sudden event or repeated exposure to

conditions involving the aircraft during the policy period . . . . All bodily injury or property damage resulting from the same general conditions will be considered to be caused by one occurrence." Id. (emphasis omitted).

The insured company was employed to aerially apply herbicide to a milo crop, but a portion of herbicide drifted onto a nearby cotton crop. Id. at 331. The herbicide damaged the cotton crop and reduced its yield. Id. The owner of the cotton crop sued the company that employed the crop duster, among others. Id.

The court decided that changes to temperature, wind, and altitude were "specific and incidental" and failed to establish that the crop dusting did not occur under the same general conditions. Id. at 335. Additionally, the court determined that multiple landings for reloading did not create new occurrences. Id. Finding that "[t]he herbicide was applied one time, in a process that required several passes over various tracts of land," the court concluded that the damage "resulted from repeated exposure to the same general conditions." Id. Thus, the application of herbicide as a whole constituted one occurrence. See id.

Relevant to the pending case, the court in Foust focused on what gave rise to liability, to wit, the misapplication of herbicide. In that case, the same event caused the injury. The court did not subdivide the one injury to the same owner's cotton

11

crops or subdivide the one event causing liability.

In H.E. Butt Grocery Company, 150 F.3d at 528, the Fifth Circuit interpreted an insurance policy with a per-occurrence, self-insured retention limit of $1,000,000. There, the policy defined "occurrence" to mean "an event, including continuous or repeated exposure to conditions, which results, in Personal Injury or Property Damage during the policy period." Id. at 529 (internal alterations omitted). The material facts in that case related to two incidents of sexual abuse of children by an H.E. Butt Grocery Company employee. See id. at 528. The assaults occurred about a week apart in the restroom of one of the company's grocery stores. Id.

The court framed the pertinent question as "whether [the company's] negligent employment relationship with its pedophilic employee, rather than the two acts of sexual abuse, 'caused' the injuries to the two children and gave rise to [the company's] liability." Id. at 530. After discussing several cases, the court concluded that the immediate cause of damage was the employee's intentional tort and that the court could not look to underlying causes for purposes of the insurance policy. Id. at 530-31. The court agreed with the holding in a Ninth Circuit case that negligent supervision alone, ongoing or not, would not trigger the insurance policy. See id. at 534. Thus, the two sexual assaults were separate occurrences. See id. at 531. The court

12

distinguished a case that answered in the affirmative the question whether, under Louisiana law, multiple molestations of the same child was one occurrence. See id. at 533 (discussing <u>Soc'y of the Roman Catholic Church of the Diocese of Lafayette & Lake Charles, Inc. v. Interstate Fire & Cas. Co.</u> [hereinafter, <u>Catholic Church</u>], 26 F.3d 1359 (5th Cir. 1994)).

The <u>H.E. Butt Grocery Company</u> case provides this court with important guidance, to wit, that "a single negligent act undoubtedly can produce multiple 'occurrences' if the injuries are independent." <u>Id.</u> at 533-34 (quoting <u>Lee v. Interstate Fire & Cas. Co.</u>, 86 F.3d 101, 104 (7th Cir. 1996)). The Fifth Circuit continued:

> This is the same type of "cause" analysis undertaken by other courts. While "a single occurrence may result in multiple injuries to multiple parties over a period of time . . . . if one cause is interrupted and replaced by another intervening cause, the chain of causation is broken and more than one occurrence has taken place.

<u>Id.</u> at 534 (internal alteration omitted) (quoting <u>Home Indem. Co. v. City of Mobile</u>, 749 F.2d 659, 662 (11th Cir. 1984)).

In <u>Esparza</u>, 2007 WL 969585, at *5, the district court interpreted two truckers' liability insurance policies with per-accident liability limits of $1,000,000. The policies defined "accident" to include "continuous or repeated exposure to the same conditions resulting in 'bodily injury' or 'property damage.'" <u>Id.</u> at *8.

There, a tractor-trailer rig was traveling northbound on a

13

Texas highway when it crossed into the southbound lanes of the highway and collided with two oncoming vehicles. Id. at *5. It struck a Ford pick-up truck while it was traveling in the left southbound lane and struck a Ford Expedition while it was traveling in the right southbound lane. Id. After the collision with the Ford Expedition, the tractor-trailer and the Ford Expedition both burst into flames. Id. Ten of the twelve individuals in the southbound vehicles died; the tractor-trailer driver survived with minimal injuries. See id.

The insurance defendants argued that the condition to which the injured parties were exposed was the tractor-trailer's crossing the median into ongoing traffic and that it was one continuous event. See id. at *10. But the court disagreed, concluding that the insurance defendants' arguments were "over-reaching." Id. The court discussed H.E. Butt Grocery Company, Maurice Pincoffs Company, and other cases. See id. at **8-10. Applying the teachings of those cases and the "cause" analysis, the court found that, if the tractor-trailer had crossed into the southbound lanes without colliding with any vehicles, the insured would not be subject to any liability. See id. at **8, 10. The court identified each collision as the cause of injuries and as two separate events giving rise to the insured's liability. See id. at *10.

The following explanation by the Esparza court is helpful in

14

this case:

> The [pick-up] truck's collision with the tractor-trailer did not cause the [pick-up] truck to spin out of control into the Expedition. Likewise, the Expedition's collision with the tractor-trailer did not cause the Expedition to spin out of control into the [pick-up] truck. Similarly, neither the [pick-up] truck's nor the Expedition's collision with the tractor-trailer caused the tractor-trailer to lose control and collide with any other vehicle.

Id.

These cases and others not discussed here lead the court to the conclusion that the collisions at the toll plaza constituted two separate "accidents" under Defendant's policy. Diggs' failure to control the Mack truck may have been the underlying cause of the collisions, but the collisions themselves caused the injuries and gave rise to the Global's liability. See H.E. Butt Grocery Company, 150 F.3d at 531. If the out-of-control Mack truck had not collided with any other vehicle or property, as it did for stretches of its out-of-control travel that day, there would be no accident for which Global would be liable. See Maurice Pincoffs Co., 447 F.2d at 206; Esparza, 2007 WL 969585, at *10.

The collisions between the Mack truck and the Honda Accord and between the Mack truck and the Dodge Charger were separate accidents because they occurred independently, the former did not lead to the occurrence of the latter. See Esparza, 2007 WL 969585, at *10. The collision between the Mack truck and the Honda Accord resulted in the damage to Cruz's vehicle and to the toll plaza, but

15

the Mack truck continued on approximately sixty-six feet after disengaging from the Honda Accord before striking the Dodge Charger. Diggs' negligent driving produced several "accidents" in total, including the two at the toll plaza, because multiple injuries to multiple parties were independently caused by each separate collision. See H.E. Butt Grocery Company, 150 F.3d at 534.

Defendant is responsible for its limit of liability for the separate accident between the Mack truck and the Dodge Charger.

## IV. Conclusion

Based on the foregoing, the court **RECOMMENDS** that Plaintiff's motion be **GRANTED** and Defendant's motion be **DENIED**.

The Clerk shall send copies of this Memorandum and Recommendation to the respective parties who have fourteen days from the receipt thereof to file written objections thereto pursuant to Federal Rule of Civil Procedure 72(b) and General Order 2002-13. Failure to file written objections within the time period mentioned shall bar an aggrieved party from attacking the factual findings and legal conclusions on appeal.

The original of any written objections shall be filed with the United States District Clerk electronically. Copies of such objections shall be mailed to opposing parties and to the chambers of the undersigned, 515 Rusk, Suite 7019, Houston, Texas 77002.

**SIGNED** in Houston, Texas, this 6th day of September, 2017.

_____
U.S. MAGISTRATE JUDGE