UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| EVANSTON INSURANCE COMPANY, | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | CIVIL ACTION H-16-818 |
| | § | |
| MID-CONTINENT CASUALTY COMPANY, | § | |
| | § | |
| *Defendant*. | § | |

**MEMORANDUM OPINION AND ORDER**

Pending before the court is a memorandum and recommendation ("M&R") filed by Magistrate Judge Nancy Johnson. Dkt. 26. The Magistrate Judge considered the parties' cross-motions for summary judgment (Dkts. 15, 17). *Id.* Defendant Mid-Continent Casualty Company ("Mid-Continent") timely objected to the M&R. Dkt. 27. Plaintiff Evanston Insurance Company ("Evanston") did not object. Having considered the M&R, the motions, Mid-Continent's objections, and other relevant materials in the record, the court is of the opinion that Mid-Continent's objections should be **OVERRULED** and that the M&R should be **ADOPTED IN FULL**.

**I. BACKGROUND**

Evanston filed this subrogation action seeking reimbursement from Mid-Continent for a portion of the payments Evanston made on behalf of their mutually insured, Global Waste Services LLC ("Global"). Dkt. 1. The parties have stipulated to the material facts. Dkt. 14.

Mid-Continent issued a commercial automobile policy to Global with a $1,000,000 per-accident limit of liability. *Id.* ¶ 1. Evanston insured Global under an excess liability policy that was written in excess to the Mid-Continent policy. *Id.* ¶ 2. The Mid-Continent policy provided that Mid-Continent would "pay all sums an 'insured' legally must pay as damages because of 'bodily injury'

or 'property damage' to which this insurance applies, caused by an 'accident' and resulting from the ownership, maintenance or use of a covered 'auto.'" Dkt. 15, Ex. B. Mid-Continent also agreed to defend Global against lawsuits seeking damages until Mid-Continent exhausted the limit of liability by payment of judgment or settlements. *Id.* The policy limited liability for "one 'accident'" to $1,000,000, "[r]egardless of the number of covered 'autos,' 'insureds,' premiums paid, claims made or vehicles involved in the 'accident.'" *Id.* Finally, the policy defined "accident" to include "continuous or repeated exposure to the same conditions resulting in 'bodily injury' or 'property damage.'" *Id.*

On November 15, 2013, Global employee Marlon Diggs drove a Mack truck west on Beltway 8 in Houston, Texas. Dkt. 14 ¶ 3. Several witnesses reported Diggs's erratic driving. *Id.* ¶ 4. At approximately 11:04 a.m., the Mack truck struck a Dodge Ram 150 in the 800 block of Beltway 8. *Id.* ¶ 5. Approximately three minutes later, the Mack truck struck a Ford F150 driven by Alexander Garcia in the 2500 block of Beltway 8. *Id.* ¶ 6. Approximately two minutes later, the Mack truck struck a Honda Accord ("Honda") driven by Joseph Williams, who was waiting in line to pay the toll in the 3300 block of Beltway 8. *Id.* ¶ 7.

Upon colliding with the Honda, the Mack truck pushed the Honda forward approximately 107 feet into crash-attenuator barrels separating the far left coin lane and the lane to the immediate right. *Id.* The collision with the Honda severely injured Joseph Williams's passenger, his wife Laurie Williams. *Id.* Debris from the collision with the Honda struck a vehicle driven by Nicholas Cruz. *Id.* ¶ 11. The Mack truck disengaged the Honda and continued to travel through the toll lane, where the Mack truck struck and damaged the tollbooth. *Id.* ¶ 8. The Mack truck traveled approximately sixty-six feet after disengaging from the Honda before it struck a Dodge Charger ("Charger") driven by Gwenetta Powell. *Id.* As the Mack truck pushed the Charger, the Mack

truck's driver-side door opened and Diggs fell out of the truck. *Id.* ¶ 9. The Mack truck continued pushing the Charger and eventually pinned it against the right side retaining wall. *Id.* Diggs never applied the brakes anytime after colliding with the Honda. *Id.* ¶ 10. Both Diggs and Powell died due to the collision. *Id.* ¶ 9.

As a result of these collisions, Powell's relatives sued Global in state court, and the Williams family intervened for their injuries. *Id.* ¶ 12. The Williams' insurer also made a claim for the Honda's repairs. *Id.* ¶ 15. Harris County demanded that Global pay for the costs of cleaning up hazardous materials at the site and for damage to the tollbooth. *Id.* ¶ 14. Finally, Garcia and Cruz made claims for repairs to their vehicles. *See id.* ¶ 16. Mid-Continent settled: (1) Harris County's cleanup claim for $1,340; (2) the Williams' repair claim for $9,500; (3) Garcia's repair claim for $4,225.18; and (4) Cruz's repair claim for $2,300. *Id.*

Eventually, the Williams' remaining claim settled for $4,500,000. *See id.* ¶ 17. Mid-Continent contributed $982,634.82 and claimed exhaustion of the policy limits on liability. *See id.* Evanston contributed the remaining $3,517,365.18. *Id.* Evanston also assumed Global's defense for the remaining claims, but reserved its right to seek reimbursement from Mid-Continent. *Id.* ¶ 19. Evanston then settled Powell's claims for $2,125,000, and Harris County's tollbooth claim for $75,000. *Id.* ¶¶ 20, 21. In total, Evanston paid $5,717,365.18 in indemnity and $40,881.45 in defense fees after Mid-Continent claimed exhaustion. *Id.* ¶¶ 22, 23.

The only issue before the court is whether the collisions constitute one "accident" as the term is defined under Mid-Continent's policy. Evanston moves for summary judgment arguing that four accidents occurred from the time when the Mack truck struck Garcia's F150 to the time the Mack truck came to rest:

3

>    (1) the collision with Garcia's F150;
>
>    (2) the collision with the Honda (along with the cleanup incurred by Harris County and the damage to Cruz's vehicle);
>
>    (3) the collision with the tollbooth; and
>
>    (4) the collision with Charger.

Dkt. 15 at 16–17. Mid-Continent does not contest whether the collision with Garcia was a separate accident and has agreed to pay an additional $4,225.18 for that claim.[1] Dkt. 17. Mid-Continent moves for summary judgment arguing that the Mack truck's collisions with the Honda, the tollbooth, and the Charger constitute one accident. *Id.*

In the M&R, Judge Johnson finds that the collisions with the Charger and the Honda each constitute separate accidents, while the collision with the tollbooth was part of the same accident as the collision with the Honda. Dkt. 26 at 15–16. Judge Johnson recommends that Evanston's motion for summary judgment be granted in part and that Mid-Continent be held responsible for its limit of liability for the separate accident between the Mack truck and the Charger. *Id.* at 16. Mid-Continent objects to the finding that the collisions with the Charger and the Honda were separate accidents. Dkt. 27.

## II. LEGAL STANDARD

### A.    Magistrate Judge

For dispositive matters, the court "determine[s] de novo any part of the magistrate judge's disposition that has been properly objected to." Fed. R. Civ. P. 72(b)(3). "The district judge may

---

[1] Mid-Continent later stated that it believed the damage to Garcia's vehicle was part of the same accident as the other collisions, and that it only agreed to pay Evanston for Garcia's repairs to allow the court to focus on the collisions at the toll plaza. Dkt. 22 at 2.

accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." *Id.* "When no timely objection is filed, the court need only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." Fed. R. Civ. P. 72(b), Advisory Comm. Note (1983). For non-dispositive matters, the court may set aside the magistrate judge's order only to the extent that it is "clearly erroneous or contrary to law." Fed. R. Civ. P. 72(a).

**B.     Motion for Summary Judgment**

A court shall grant summary judgment if a "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed R. Civ. P. 56(a). "[A] fact is genuinely in dispute only if a reasonable jury could return a verdict for the nonmoving party." *Fordoche, Inc. v. Texaco, Inc.*, 463 F.3d 388, 392 (5th Cir. 2006). "Cross-motions must be considered separately, as each movant bears the burden of establishing that no genuine issue of material fact exists and that it is entitled to prevail as a matter of law." *Shaw Constructors v. ICF Kaiser Eng'rs*, 395 F.3d 533, 538–39 (5th Cir. 2004) (footnote omitted). If the moving party meets its burden, the burden shifts to the non-moving party to set forth specific facts showing a genuine issue for trial. Fed R. Civ. P. 56(e). The court must view the evidence in the light most favorable to each non-movant and draw all justifiable inferences in favor of each non-movant. *Ford Motor Co. v. Tex. Dep't of Transp.*, 264 F.3d 493, 498 (5th Cir. 2001). "If there is no genuine issue and one of the parties is entitled to prevail as a matter of law, the court may render summary judgment." *Shaw Constructors*, 395 F.3d at 539 (footnote omitted).

### III. OBJECTIONS

Mid-Continent objects that: (1) Judge Johnson's recommendation is inconsistent with the policy language; (2) courts in other states have rejected Judge Johnson's analysis; and (3) Texas case

law supports the finding of only one accident. Dkt. 27. The court will consider each objection in turn.

**A.     Policy Language**

Mid-Continent objects that the M&R is inconsistent with the Mid-Continent policy language. *Id.* at 5. In particular, Mid-Continent argues that Judge Johnson's recommendation is inconsistent with the policy's definition of "accident," which includes "continuous or repeated exposure to the same conditions resulting in 'bodily injury' or 'property damage.'" *Id.* at 6. Mid-Continent also argues that Judge Johnson's interpretation renders the limitation of liability clause meaningless because the clause limits liability "[r]egardless of the number of . . . vehicles involved." *Id.* at 8.

The court construes insurance policies under the rules of contract interpretation. *State Farm Lloyds v. Page*, 315 S.W.3d 525, 527 (Tex. 2010). The primary goal "is to determine the contracting parties' intent through the policy's written language." *Id.* All of the contract provisions should be read together so that every provision is given meaning. *Id.* The court gives contract terms their plain meaning unless the contract indicates that the parties intended different meanings. *Tanner v. Nationwide Mut. Fire Ins. Co.*, 289 S.W.3d 828, 831 (Tex. 2009).

The policy states that an "accident" includes "continuous or repeated exposure to the same conditions resulting in 'bodily injury' or 'property damage.'" Dkt. 15, Ex. B. Mid-Continent argues that Judge Johnson ignores this language because each collision was caused by exposure to the same condition: the out-of-control Mack truck. Dkt. 27 at 7. However, under Judge Johnson's recommendation, the term "same conditions" does not refer to the overarching cause of the collision, but rather the cause of each injury. Dkt. 26 at 15. This conclusion is consistent with the policy language. For example, Judge Johnson finds that the property damage to the tollbooth was part of the same accident as the collision with the Honda. *Id.* The collision with the Honda resulted in

6

bodily injuries to the Williams family, as well as property damage to the Honda, Cruz's vehicle, and the tollbooth. *Id.* Because the same condition—the collision with the Honda—resulted in those damages, Judge Johnson correctly finds that those collisions are part of the same accident. Conversely, Powell's death and damage to the Charger did not occur because of the collision with the Honda. Rather, that damage occurred because of the independent collision with the Charger. Under the policy language, the Charger's collision should be considered a separate accident. Thus, Judge Johnson's interpretation matches the policy's definition of "accident." And as explained below, the interpretation is also consistent with Texas law. *See infra* Section III.C.

Mid-Continent also argues that the M&R renders the limitation of liability clause meaningless because the clause applies "[r]egardless of the number of . . . vehicles involved." Dkt. 27 at 8. According to Mid-Continent's view of the M&R, a single accident cannot involve multiple vehicles. *Id.* However, in its objections, Mid-Continent provides a scenario in which multiple vehicles could be involved in the same accident under Judge Johnson's rationale. *Id.* Thus, by its own admission, the clause is not meaningless. If a collision creates a chain reaction leading to collisions with other vehicles, the damage to the subsequent vehicles would have resulted from the collision with the first vehicle. However, this scenario is not supported by the facts in this case. The collision with the Charger occurred independently of the collision with the Honda, even if they were in close proximity. Thus, Judge Johnson's recommendation is consistent with the policy language and Mid-Continent's objection is **OVERRULED**.

**B.     Other States' Construction of "Accident"**

Mid-Continent objects that other states' supreme courts reject Judge Johnson's construction of the term "accident." Dkt. 27 at 13. In particular, Mid-Continent contends that the Iowa and Georgia "cause" analyses would reach the opposite result: that only one accident occurred. *Id.* at 9.

7

However, neither party disputes that Texas law governs this action. In a diversity case in which Texas law governs, this court must apply Texas Supreme Court precedent. *Hughes v. Tobacco Inst., Inc.*, 278 F.3d 417, 420–21 (5th Cir. 2001). Further, the court must follow the Fifth Circuit's interpretation of the law unless a subsequent state court decision renders the former's decision clearly wrong. *Id.* at 421. Other states' law provides persuasive authority that may be considered, but is not binding. *See SMI Owen Steel Co. v. Marsh USA, Inc.*, 520 F.3d 432, 437 (5th Cir. 2008). As illustrated below, Texas law, as applied by the Fifth Circuit and other courts, conclusively supports Judge Johnson's recommendation. *See infra* Section III.C. Thus, Mid-Continent's objection that other states have rejected Judge Johnson's analysis is **OVERRULED**.

### C. Texas Case Law

Finally, Mid-Continent objects on the ground that Texas case law supports a finding of one accident. Dkt. 27 at 13. Texas courts apply a "cause" analysis, which focuses "on the events that cause the injuries and give rise to the insured's liability, rather than on the number of injurious effects." *H.E. Butt Grocery Co. v. Nat'l Union Fire Ins. Co.*, 150 F.3d 526, 530 (5th Cir. 1998). Mid-Continent addresses three cases to argue that Judge Johnson's recommendation is inconsistent with Texas's "cause" analysis. Dkt. 27 at 13–16. However, these cases and others support Judge Johnson's recommendation.

#### 1. *Foust v. Ranger Insurance Co.*

Mid-Continent relies on a case involving the aerial spraying of herbicide over a tract of land. *Foust v. Ranger Ins. Co.*, 975 S.W.2d 329, 331 (Tex. App.—San Antonio 1998, pet. denied). In *Foust*, the court interpreted a policy defining "occurrence" as "a sudden event or repeated exposure to conditions involving the aircraft during the policy period." *Id.* at 333. Further, the policy provided that "[a]ll bodily injury or property damage resulting from the same general conditions will

8

be considered to be caused by one occurrence." *Id.* When the insured sprayed the herbicide, some of the herbicide drifted onto and damaged neighboring crops. *Id.* at 331. Even though the weather conditions varied throughout the day and the plane reloaded several times, the court held that the application of the herbicide was the general condition and thus the incident involved only occurrence. *Id.* at 335.

Mid-Continent argues that under Judge Johnson's rationale, a separate occurrence would result from each contact with the neighboring tracts of land. Dkt. 27 at 14. However, the M&R is consistent with *Foust*. Judge Johnson considered what gave rise to liability. Dkt. 26 at 15. Here, each collision caused the injuries that gave rise to liability. As the M&R correctly notes, if the Mack truck did not collide with any vehicle that day, Global would have no liability. *Id.* While Diggs's driving may have been the underlying cause of the collisions, Diggs's driving is not what gave rise to liability. Further, the collisions with the Honda and Charger happened independently of one another, even if in close temporal proximity. In *Foust*, the spraying of the herbicide gave rise to liability by causing the injuries to the crops. *See* 975 S.W.2d at 331. Further, "[t]he herbicide was applied one time, in a process that required several passes over various tracts of land." *Id.* at 335. Unlike the instant case, *Foust* did not involve independent causes of injury. Thus, Judge Johnson's M&R does not conflict with *Foust*.

2.  *Twin City Fire Insurance Co. v. Illinois National Insurance Co.*

Next, Mid-Continent cites a case involving a road construction defect, arguing that it conflicts with the M&R. Order at 2, *Twin City Fire Ins. Co. v. Ill. Nat'l Ins. Co.*, No. 1:11-cv-00144-SS (W.D. Tex. Mar. 12, 2012), ECF No. 38. In *Twin City*, a defect in the insured's road construction caused three car accidents on three different days. *Id.* The policy defined "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful

conditions." *Id.* at 4. The *Twin City* court determined that all three car accidents constituted only one occurrence. *Id.* at 9. The court acknowledged that multiple events might have caused the accidents, but noted that the relevant inquiry is what gave rise to the liability. *Id.* at 5. The only "occurrence" that could give rise to liability was the insured's defective construction. *Id.* at 7. Thus, any liability arose from that one injurious contact. *See id.* at 9. But here, both collisions were injurious contacts that separately gave rise to liability. The Honda collision did not give rise to liability for Powell's injuries or damage to the Charger, and the Charger collision did not give rise to liability for the Williams' injuries or damage to the Honda. Thus, Judge Johnson's M&R does not conflict with *Twin City*.

   3.  *H.E. Butt Grocery Co. v. National Union Fire Insurance Co.*

Mid-Continent also argues that the M&R conflicts with *H.E. Butt Grocery*. Dkt. 27 at 15. In *H.E. Butt Grocery*, the Fifth Circuit interpreted a policy defining "occurrence" as "an event, including continuous or repeated exposure to conditions, which results, in Personal Injury or Property Damage during the policy period." 150 F.3d at 529. That case involved two incidents of sexual assault of children by an HEB employee. *See id.* at 528. In deciding whether these incidents constituted one or two occurrences, the court considered whether the negligent employment relationship caused the injuries and gave rise to liability. *Id.* at 530. The court held that two occurrences took place, reasoning that the court should consider the immediate cause of the injuries (the acts of sexual assault) and not the underlying cause (the negligent supervision). *Id.* at 530–31. The court held that "the two independent acts of sexual abuse 'caused' the two children's injuries and gave rise to HEB's separate and distinct liability in each case." *Id.* at 531. Under that reasoning, the relevant inquiry is whether the injuries are independent or part of the same causal chain. *Id.* at 534. In fact, the court recognizes that "a single negligent act undoubtedly can produce multiple

'occurrences' if the injuries are independent." *Id.* at 533–34 (quoting *Lee v. Interstate Fire & Cas. Co.*, 86 F.3d 101, 104 (7th Cir. 1996)).

The M&R is entirely consistent with *H.E. Butt Grocery*. Rather than looking to the underlying cause of the injuries (Diggs's driving), Judge Johnson considered what gave rise to the liability. Dkt. 26 at 15. The collisions gave rise to the liability, and the collisions each occurred independently of the other. Thus, *H.E. Butt Grocery* controls, and both collisions constituted individual accidents.

4. Other Fifth Circuit Precedent

Moreover, other Fifth Circuit cases support Judge Johnson's conclusion. *See Maurice Pincoffs Co. v. St. Paul Fire & Marine Ins. Co.*, 447 F.2d 204, 206 (5th Cir. 1971) (applying Texas law). In *Maurice Pincoffs*, the insured sold contaminated bird seed to eight different dealers. *Id.* at 205. The case involved only one incident of contamination, but the Fifth Circuit held that each sale constituted an occurrence because the sales gave rise to liability, not the contamination. *See id.* at 206. The act of contamination did not subject the insured to any liability because the insured could have destroyed the seed, and any potential liability, before the sale. *Id.* That reasoning is in line with Judge Johnson's reasoning: "If the out-of-control Mack truck had not collided with any other vehicle or property, as it did for stretches of its out-of-control travel that day, there would be no accident for which Global would be liable." Dkt. 26 at 15. Diggs's driving did not create liability any more than the contaminated bird seed did in *Maurice Pincoffs*. Rather, the collisions created the liability.

The Fifth Circuit also recognizes that the court should not "look to any overarching cause," but rather the event that gave rise to liability. *U.E. Tex. One-Barrington, Ltd. v. Gen. Star Indem. Co.*, 332 F.3d 274, 278 (5th Cir. 2003) (applying Texas law). In conducting the "cause" analysis, Judge Johnson did not look to Diggs's driving as the overarching cause, but rather to each

11

independent collision as the source of liability. Thus, the M&R is supported by Fifth Circuit interpretations of Texas law. Accordingly, Mid-Continent's objection is **OVERRULED**.

For these reasons, the court **ADOPTS IN FULL** the Magistrate Judge's opinion that the collisions with the Honda and the Charger constitute two "accidents" under the policy. Mid-Continent is responsible for its limit of liability for the separate accident with the Charger.

## IV. CONCLUSION

Mid-Continent's objections (Dkt. 27) are **OVERRULED**. The M&R (Dkt. 26) is hereby **ADOPTED IN FULL**. Evanston's motion for summary judgment (Dkt. 15) is **GRANTED IN PART**, and Mid-Continent's motion (Dkt. 17) is **DENIED**. The court will rule on damages upon further briefing from the parties.

Signed at Houston, Texas on September 29, 2017.

_____
Gray H. Miller
United States District Judge